# United States Court of Appeals for the Federal Circuit

_____

**TESCO CORPORATION,**
*Plaintiff*

**v.**

**NATIONAL OILWELL VARCO, L.P., OFFSHORE ENERGY SERVICES, INC., FRANK'S INTERNATIONAL, LLC,**
*Defendants-Appellees*

**v.**

**GLENN A. BALLARD, JR., JOHN F. LUMAN, III,**
*Interested Parties-Appellants*

_____

2015-1041

_____

Appeal from the United States District Court for the Southern District of Texas in No. 4:08-cv-02531, Judge Keith P. Ellison.

_____

Decided:  October 30, 2015

_____

JOHN WESLEY RALEY, III, Raley & Bowick, LLP, Houston, TX, argued for defendant-appellee National Oilwell Varco, L.P. Also represented by ROBERT MCGEE BOWICK, JR., BRADFORD TURNER LANEY.

CLAYTON JAMES BUSHMAN, Bushman & Associates, Houston, TX, for defendant-appellee Offshore Energy Services, Inc. Also represented by ERIN WERNER.

LESTER L. HEWITT, Attorney at Law, Houston TX, for defendant-appellee Frank's International, LLC. Also represented by SARAH J. RING, DAVID R. CLONTS, JAMES L. DUNCAN, III, ASHLEY M. BROWN, Akin, Gump, Strauss, Hauer & Feld, LLP, Houston, TX; REX S. HEINKE, Los Angeles, CA.

GRANT HARVEY, Gibbs & Bruns, Houston, TX, argued for interested parties-appellants. Also represented by JEFFREY C. KUBIN, AYESHA NAJAM; WILLIAM F. LEE, RICHARD WELLS O'NEILL, KATIE SAXTON, MICHAELA P. SEWALL, CAITLIN LOOBY, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA.

————————————

Before NEWMAN, O'MALLEY, and CHEN, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

Plaintiff Tesco Corporation ("Tesco") and interested parties-appellants Glenn A. Ballard, Jr. and John F. Luman, III (collectively "the Attorneys") filed this appeal from a decision of the United States District Court for the Southern District of Texas dismissing Tesco's patent infringement suit with prejudice pursuant to the court's inherent authority to sanction. *Tesco Corp. v. Weatherford Int'l, Inc.*, No. H-08-2531, 2014 WL 4244215 (S.D. Tex. Aug. 25, 2014) ("*Sanctions Order*"). During the pendency of the appeal, Tesco and defendant-appellees National Oilwell Varco, L.P., Offshore Energy Services, Inc., and Frank's Casing Crew & Rental Tools, Inc. (collectively "NOV") entered into a settlement resolving all outstanding issues. The Attorneys also participated in the settlement, with the parties and all counsel signing

mutual releases. The Attorneys contend that, despite the settlement, the harm to their reputation from the district court's opinion justifies our continued jurisdiction over the appeal. Because we find that there is no remaining case or controversy to adjudicate, we dismiss the appeal.

BACKGROUND

I

Tesco filed a complaint against NOV for infringement of U.S. Patent Nos. 7,140,443 and 7,377,324 on August 19, 2008. These patents involve a tool used in well drilling technology—an apparatus and method for handling sections of pipe used for lining a well bore. *Id*. at *1. The purportedly innovative aspect of the technology is the location of the point of connection for "link arms," which connect the Case Drilling System to the drill pipe that will be placed in the well bore. U.S. Patent No. 7,377,324 col.1 l.31 – col.2 l.27. In the prior art systems, the link arms attached to the top drive of a Case Drilling System, but the patents-at-issue described a Case Drilling System with the link arms attached to the lower pipe engaging apparatus. *Id*. By lowering the point of connection, the link arms could better reach and grab sections of the pipe.

In response to Tesco's complaint, NOV filed an answer, counterclaims, and a request for attorney's fees under 35 U.S.C. § 285. NOV subsequently filed a series of motions to compel requesting, in part, information about any relevant documents that evidence what occurred during the six month period prior to the on-sale bar date of November 2002. Tesco claimed that it had already disclosed all relevant documents, but nevertheless eventually released a series of printed invoices for brochures created shortly before November 2002. In light of these invoices, NOV specifically requested any information about the brochures, including the brochures themselves, but Tesco denied the continuing existence of these brochures. During a status conference, the district court

asked Tesco about the brochures, and Ballard, Tesco's attorney, insisted that Tesco had produced all responsive documents. Joint Appendix ("J.A.") 10703. Up until trial, NOV continued to file motions requesting the brochures, and Tesco continued to deny their existence. At the pre-trial conference, the district court again reiterated his concern about possible non-production of documents, stating that "if there are documents that have been produced to others but not the adversaries, that's, obviously, very serious conduct." J.A. 20111–12.

Trial began on October 25, 2010. On October 28, NOV cross-examined one of the named inventors of the patents-at-issue, Kevin Nikiforuk. NOV questioned Nikiforuk about an image in Exhibit 851, which NOV claimed was the missing brochure from August 2002 that Tesco contended no longer existed. NOV explained that it found the brochure in a box of documents from a prior litigation between Tesco and one of the defendants, and placed the document in their pretrial exhibit list. During questioning, Nikiforuk agreed that, even though he could not see the image clearly, the link arms in the image were attached to the pipe engaging apparatus. The district court instructed Nikiforuk not to speculate, and to answer only if he authoritatively could identify the connection point. Nikiforuk again stated that the image appeared to show the claimed invention.

Tesco objected to this testimony and asked that it be stricken as speculative and irrelevant. Ballard then requested time to determine why the brochure was not produced during discovery and if it actually represented the claimed invention. The next day, Ballard informed the court that Tesco had produced a low-resolution, black-and-white, single-page version of the brochure during discovery, and argued that none of the defendants had asked for a clearer version of the produced document. Ballard then told the court that the image in the brochure did not show the claimed invention. In response, NOV

requested a curative instruction and a sanction switching the burden of proof due to Tesco's failure to disclose an original, legible version of the brochure. Certain defendants also refused an offer of a mistrial because they did not want to give Tesco the opportunity to prepare Nikiforuk for a new trial, insisting that they preferred entry of judgment to a new trial. Ballard agreed to continue to investigate the brochure over the weekend. J.A. 20724.

On November 1, Ballard explained that he had done further research on the brochure, and that Luman had contacted the alleged designers of the brochure. Ballard then made the following declaration to the court:

> As I told the Court, I would get to the bottom of this August brochure issue, 4008, over the weekend. We did so. We found the animator who actually did the rendering in question. That animator is Don Carr [sic]. *He says unequivocally that this is not the invention in the brochure.* We explained that in the papers we filed this morning. He left Tesco four years ago. We didn't have his name until this weekend. He lives in Canada. But if the trial -- if they want to continue to maintain that 4008 is the invention, we're going to want to call him at some point in the trial.

J.A. 20885 (emphasis added). Ballard again argued that Tesco sufficiently produced the image in black-and-white form, but the district court disagreed, stating that the black-and-white version was not equivalent to the color version, especially with regards to the point of connection for the link arms. Ballard then continued:

> I hope to put – I think the issue has been put to bed. It's not the image. I can call Don Carr [sic] to tell you that. We also talked to a guy last night, Jim Orcherton, who was also an individual who worked on the rendering. We didn't have time to put this in our papers. This was late last night.

*He also confirms that it's not the tool.* And so we could call both of them.

J.A. 20888 (emphasis added). Ballard reiterated that, based on the statements of Karr and Orcherton, "there is no doubt that [the image in the brochure is] not Mr. Nikiforuk's invention." J.A. 20897. Ballard made this same assertion to the jury in his closing argument.

In light of the non-production of the original brochure, the district court sanctioned Tesco by reversing the burden of proof on validity, and setting the burden to be a preponderance of evidence. The jury concluded that NOV infringed the relevant claims of the patents-at-issue, found certain of those claims to be not invalid, and found that the brochure was not enabling.

## II

After trial, the district court issued an April 12, 2011 order permitting post-trial discovery on the brochure. NOV filed what the parties characterize as post-trial summary judgment motions of invalidity under 35 U.S.C. § 102(b) and § 103 based on, *inter alia,* what it asserts was disclosed in the brochure.[1] NOV also filed further motions to compel regarding the brochure, alleging bad faith on the part of Tesco. The court held a series of hearings regarding the brochure. The district court denied NOV's post-trial summary judgment motion regarding the on-sale bar on October 19, 2012, *Tesco v. Weatherford Int'l, Inc.,* 904 F. Supp. 2d 622 (S.D. Tex. 2012), but granted NOV's post-trial summary judgment

---

[1] These motions more appropriately should be characterized as motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, not as Rule 56 motions for summary judgment.

motion for obviousness on December 6, 2012,[2] *Tesco Corp. v. Weatherford Int'l, Inc.*, 904 F. Supp. 2d 638 (S.D. Tex. 2012). The court did not base the obviousness determination on the brochure, but instead relied on an obvious-to-try analysis. *Id.* at 643 n.2.

NOV continued its post-trial motions practice with a focus on its request for attorney's fees under § 285. Tesco filed a motion seeking judgment in its favor regarding the exceptional case determination, arguing that a "trial" was unnecessary because all relevant allegations regarding litigation misconduct had already been heard by the court.[3] During a June 4, 2013 hearing, the court asked Ballard if he currently believed that the brochure disclosed the invention, and Ballard admitted that it did, but reiterated that Karr and Orcherton had told Luman during trial that the brochure did *not* disclose the invention. At the same hearing, the district court expressed its

---

[2] Tesco attempted to appeal the district court's summary judgment decision. The district court contacted our court, however, informing the Clerk of Court that the appeal was premature because he had not yet resolved a pending counterclaim seeking a declaration of unenforceability of the patents on inequitable conduct grounds or ruled on NOV's request for attorney's fees. After briefing by both parties, we dismissed the appeal as premature. Order at 3, *Tesco Corp. v. Nat'l Oilwell Varco, L.P.*, Nos. 2013-1155, -1262 (Fed. Cir. Oct. 3, 2013).

[3] NOV filed what it characterized as a "counterclaim" for attorney's fees under § 285. Though that procedural posture was odd, since a motion under § 285 can be filed without the assertion of an affirmative claim, the parties treated it as if it were a true counterclaim upon which they believed the court would conduct a trial. Of course, while a hearing may or may not have been needed, no "trial" was required.

concerns that Tesco may have brought suit without doing the necessary due diligence to find a brochure that could have been invalidating.

### III

NOV deposed both Karr and Orcherton near the end of 2013, focusing on the discussions between Karr/Orcherton and the Attorneys during trial. Karr testified that he did not say that the brochure failed to disclose the invention. J.A. 40391. Karr explained that, when he first spoke with Luman, he informed Luman that he could not tell definitively where the link arms connected to the Case Drive System in the brochure because of the low resolution of the image. J.A. 40391; *see also Sanctions Order*, at *4–5 (presenting further relevant portions of Karr's deposition testimony). Once Luman sent Karr a higher resolution picture three days later—still during the trial—Karr says he then told Luman that the image *did* show the invention. He further informed Luman that he did not prepare the image. Orcherton also was asked about the image, and this conversation with Luman, and Orcherton responded that he explained to Luman that he had no knowledge of who did the rendering of the image in the brochure. J.A. 40406.

After discovery was completed, the district court set a trial date of March 17, 2014, for the exceptional case "counterclaim," and held a motions hearing on February 21, 2014, to discuss, in part, the litigation misconduct issue.

### IV

On August 25, 2014, the district court issued an order sua sponte dismissing the case with prejudice under the court's inherent authority based on counsel's inaccurate

representations "to the Court during trial."[4]   *Sanctions Order*, at *1.   The court found that Karr and Orcherton's testimony was "contrary to the representations Tesco made to the Court during trial." *Id*.   The court concluded that Karr did not "unequivocally" state that the brochure did not include the invention.   The court found that the representation to the court during trial justified a finding of bad faith.   *Id*.   The court said that had Karr and Orcherton's actual statements been reported to the court, it may have entered judgment for NOV at that point in the trial.   *Id*.   Indeed, the Attorneys concede on appeal that they knew that the brochure disclosed the invention within days of telling the court that it did not and knew that Karr did not prepare the rendering, despite telling the court he did.   *See* note 6, *infra*.

The court said it had an "independent obligation to safeguard . . . the proceedings before it."   *Id*.   It reasoned that the brochure "might very well have been case dispositive." *Id*.   The court explained that a lesser sanction would be insufficient.   *Id*. at *7.   The court went on to emphasize, however, that:

> The Court reaches its decision with great reluctance. The Court is entirely confident that the conduct that it finds so troubling is entirely out of character for the attorneys. However, the conduct is serious and has had significant and costly ramifications to the Court and Defendants.

*Id*.   The court did not award fees to NOV at this time, but said it was reserving the question of whether fees might be appropriate for later consideration in light of its Au-

---

[4]   Since the court already had entered judgment against Tesco on invalidity grounds, it appears that this dismissal was meant to operate as an alternative basis for that judgment.

gust 25 findings.   Tesco and the Attorneys again filed notices of appeal.[5]   During the pendency of the appeal, Tesco, with new counsel, reached a settlement and a mutual release with all defendants, including a release of the request for attorney's fees under § 285.   Oral Argument at 29:04–29:48, *Tesco v. Nat'l Oilwell Varco, L.P.*, No. 15-1041 (Fed. Cir. July 7, 2015).   Tesco subsequently dismissed their appeal.   Order at 2, *Tesco Corp. v. Nat'l Oilwell Varco, L.P.*, No. 15-1040 (Fed. Cir. April 23, 2015).   The Attorneys joined the settlement, including the mutual releases.   Appellants Reply Br. 6-7.   The Attorneys maintain, however, that the releases they executed explicitly carved out the Attorneys' right to continue to pursue this appeal.

## DISCUSSION

### I

We determine our jurisdiction over a case or controversy according to Federal Circuit law, not regional circuit law.   *Nisus Corp. v. Perma-Chink Sys.*, 497 F.3d 1316, 1318 (Fed. Cir. 2007) ("We resolve questions as to our jurisdiction by applying the law of this circuit, not the regional circuit from which the case arose."); *Sanders Assocs., Inc. v. Summagraphics Corp.*, 2 F.3d 394, 395 (Fed. Cir. 1993) ("[B]ecause the appealability of the sanction order relates directly to the issue of our own jurisdiction, this court will determine its own jurisdiction to hear this appeal."); *Woodard v. Sage Prods. Inc.*, 818 F.2d 841, 844 (Fed. Cir. 1987) (en banc) ("This court has the duty to determine its jurisdiction and to satisfy itself that an

---

[5]   The parties do not mention any formal ruling on or dismissal of the inequitable conduct counterclaims.   It was clearly mooted by the court's invalidity judgment, however, and would, thus, no longer affect our jurisdiction over this appeal.

appeal is properly before it."). "We may, of course, look for guidance in the decisions of the regional circuit to which appeals from the district court would normally lie, as well as those of other courts. However, our decision to follow another circuit's interpretation . . . results from the persuasiveness of its analysis, not any binding effect." *Woodard*, 818 F.3d at 844.

The Attorneys argue that there remains an Article III case or controversy because the statements made in the district court's opinion constitute a sanction against the Attorneys, and the subsequent reputational harm to the Attorneys is a sufficient injury-in-fact to justify our juris-diction. The Attorneys further claim that the district court erred, as a procedural matter, in issuing a sanctions order under its inherent authority without providing the Attorneys notice and an opportunity to be heard. The Attorneys believed that the result of the hearings held in early 2014 would be, at worst, a trial on NOV's exception-al case motion, and they claim to have been taken by surprise by the sanctions order. On the merits of the sanctions order, the Attorneys argue that the district court erred in finding bad faith because Ballard relied on Karr's statements during trial when Ballard made the representations to the court about the brochure, and Karr was equivocal during his deposition testimony about what he told Luman. According to the Attorneys, the deposi-tion evidence of Karr and Orcherton was an insufficient basis upon which to premise an exercise of the court's inherent authority. They contend, moreover, that this is especially true because the court chose to dismiss the case with prejudice.

NOV responds that, due to the settlement agreement, there is no enduring case or controversy. All parties mutually released each other, including the Attorneys, from any further liability, and NOV claims that state-ments made in an opinion issuing formal sanctions against Tesco, not the Attorneys, cannot justify our juris-

diction.  NOV also argues that the Attorneys received more than sufficient due process, including multiple opportunities to recant their statements to the court, and that the trial court informed the Attorneys on multiple occasions that he was considering issuing sanctions for litigation misconduct.  And for the merits of the sanctions order, NOV asserts that the district court acted well within its inherent powers.[6]

Because we conclude that there is no on-going case or controversy sufficient to justify our jurisdiction, we decline to engender a discussion of either the sufficiency of the district court's notice before entering the order, or the merits of the district court's use of its inherent authority to dismiss the case.[7]

---

[6]    At oral argument, the Attorneys contended that, even though they admit they knew during trial that the statements made to the district court turned out to be incorrect, they had no affirmative duty to correct the misimpression to the court under the Texas Disciplinary Rules of Professional Conduct.  Oral Argument at 41:50–42:15, *Tesco Corp. v. Nat'l Oilwell Varco, L.P.*, No. 15-1041, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2015-1041.mp3.

[7]    The dissent argues that it is "unfair" to describe the background facts giving rise to this appeal and then dismiss the appeal on jurisdictional grounds.  What the dissent fails to recognize is that, like all judgments, a legal determination regarding our jurisdiction—or lack thereof—over this appeal turns on the facts presented.  As our cases in this area reveal, even fine factual distinctions can alter the jurisdictional analysis.  As noted later, the dissent's failure to recognize the importance of factual distinctions to legal outcomes is further evidenced by its citation to cases that are materially factually distinguishable from this one.

## III

Article III, section 2 of the Constitution extends the "judicial Power of the United States" to an enumerated list of cases or controversies. Under this framework, a party must have standing to resolve the dispute, and there must be an on-going case or controversy throughout the trial and appeals. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (recognizing three elements necessary for a federal court to have Article III standing: (1) an injury-in-fact that is "actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) a likelihood that the "injury will be redressed by a favorable decision"). We have generally held that nonparties "may not appeal from judgments or other actions of a district court." *Nisus*, 497 F.3d at 1319. We have made an exception, however, for an attorney "held in contempt or otherwise sanctioned by the court in the course of litigation," concluding that, once the court has specifically punished an attorney, the injury "becomes personal to the sanctioned individual and is treated as a judgment against him." *Id.*

This appeal presents two questions that must be resolved in order for us to have jurisdiction over the dispute: (1) can the sanctions order that was explicitly issued against Tesco be considered a formal reprimand against the Attorneys so as to provide them with standing to pursue this appeal; and (2) what is the effect of the settlement by all parties on the redressability of the Attorneys' request for relief? In order for us to have jurisdiction over this appeal, we would have to conclude that the order was the equivalent of a formal reprimand against the Attorneys and that we can redress the injury to their reputation. Because we do not find we can redress the Attorneys' claimed injury, we need not decide whether the sanctions order in this case is the type of

reprimand that could confer standing to pursue this appeal.

## A

We have twice recently addressed the appealability of a sanctions order. In *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346 (Fed. Cir 2003), we held that we had jurisdiction when the Court of International Trade formally reprimanded a Department of Justice attorney. In an unpublished opinion, the Court of International Trade found that the attorney violated Rule 11 of the Rules of the Court of International Trade due to misrepresentations made to the court, including the omission of language from quotations. *Id.* at 1349–50. The Court of International Trade opinion concluded with the statement: "Accordingly, the court hereby formally reprimands her." *Id.* The Court of International Trade did not, however, impose any monetary sanctions. *Id.*

On appeal, we concluded that "we have jurisdiction to review the Court of International Trade's formal reprimand of [an attorney] for attorney misconduct." *Id.* at 1352 (noting that the reprimand was "explicit and formal, imposed as a sanction"). We explained that a formal reprimand, even without monetary sanctions, could have a "seriously adverse effect . . . upon a lawyer's reputation and status in the community and upon his career." *Id.* Because of this, we concluded that the attorney had standing to appeal the order independently of any appeal by the parties. *Id.* at 1352–53. We noted, however, that our jurisdiction did have limits—"judicial statements that criticize the lawyer, no matter how harshly, that are not accompanied by a sanction or findings, are not directly appealable." *Id.* at 1352; *see also id.* at 1353 ("Nothing in this decision should be taken as suggesting . . . that other kinds of judicial criticisms of lawyers' actions, whether contained in judicial opinions or comments in the courtroom, are also directly reviewable.").

We again addressed our jurisdiction over an appeal from a potential sanction against an attorney in *Nisus*. In *Nisus*, the district court concluded that the patent-at-issue was unenforceable because of inequitable conduct, in part due to the actions of one of the attorneys who prosecuted the patent and participated in the trial as a witness. 497 F.3d at 1318. The parties settled, but the prosecuting attorney appealed the inequitable conduct determination and the denial of his motion to intervene in the litigation. *Id*. We recognized that:

> [A] court's power to punish is not exercised simply because the court, in the course of resolving the issues in the underlying case, criticizes the conduct of a nonparty. Critical comments, such as in an opinion of the court addressed to the issues in the underlying case, are not directed at and do not alter the legal rights of the nonparty. We recognize that critical comments by a court may adversely affect a third party's reputation. But the fact that a statement made by a court may have incidental effects on the reputations of nonparties does not convert the court's statement into a decision from which anyone who is criticized by the court may pursue an appeal.

*Id*. at 1319. We reiterated our conclusion in *Precision Specialty Metals* that criticisms of attorneys intended to be "a formal judicial action" are appealable, but not other kinds of judicial criticisms. *Id*. at 1320. Because the district court did not enter any formal judicial action against the attorney, we concluded that we did not have jurisdiction over the appeal. *Id*. at 1321. We held that:

> [A]bsent a court's invocation of its authority to punish persons before it for misconduct, actions by the court such as making adverse findings as to the credibility of a witness or including critical language in a court opinion regarding the conduct

16    TESCO CORPORATION v. NATIONAL OILWELL VARCO, L.P.

of a third party do not give nonparties the right to appeal either from the ultimate judgment in the case or from the particular court statement or finding that they find objectionable.

*Id.* Allowing appeals based solely on concerns about professional reputation would open the floodgates to appeals "by any nonparty who feels aggrieved by some critical statement made by the court." *Id.* at 1320.

*Precision Specialty Metals* and *Nisus* thus require a formal sanction or reprimand to justify our jurisdiction over an appeal by an attorney from an order criticizing the attorney's conduct. The Attorneys argue that the present order should be considered the equivalent of a formal reprimand because the dismissal was predicated on the conduct of the Attorneys. The Attorneys further say that having their client's case dismissed is more harmful to them than would be a small monetary sanction, which they contend surely would justify the exercise of our jurisdiction under *Precision Specialty Metals*. NOV responds that *Nisus* makes clear that, when counsel's conduct is criticized in the course of rendering judgment against a party, that counsel lacks standing to pursue an appeal. The present case does not fit nicely within the facts of either *Precision Specialty Metals* or *Nisus*, however.

Neither *Precision Specialty Metals* nor *Nisus* addressed the effect of a subsequent settlement agreement. If Tesco, NOV, and the Attorneys had not entered into a settlement absolving all parties of any further liability, we would be required to determine if the statements made in the district court order are functionally equivalent to a formal reprimand, and thus provide the Attorneys with the standing necessary to pursue this appeal. The intervening settlement, however, renders that determination unnecessary to the resolution of this appeal.

B

Our court has not previously determined the effect of an intervening settlement on an appeal of an order containing critical statements about the conduct of an attorney. Our sister circuits have, however, addressed the effect of a change in circumstances which removes or moots the underlying judgment. We agree with their conclusion that an intervening settlement can abrogate the case or controversy justifying appellate jurisdiction.

For example, in *In re Williams*, 156 F.3d 86, 87 (1st Cir. 1998), the United States Court of Appeals for the First Circuit had to determine if "a trial court's published findings of attorney misconduct [are] . . . independently appealable, notwithstanding that the monetary sanctions imposed by the court for that conduct have been nullified." There, a bankruptcy court judge imposed Rule 37(b) sanctions against the government and two government attorneys for failing to timely produce certain documents during discovery. *Id.* at 88. In his opinion, the bankruptcy judge "harshly criticized" the two attorneys, and ordered them to each pay $750 to the court. *Id.* But on reconsideration, the judge vacated one of the monetary sanctions, and instructed that the other attorney pay the $750 to the aggrieved party, not the court. *Id.* The bankruptcy judge refused, however, to vacate his findings, and the district court also declined to vacate any of the bankruptcy court's factual findings. *Id.* at 89.

The First Circuit concluded that it did not have jurisdiction to review the factual finding from the original bankruptcy judge's opinion. *Id.* at 89–92. Once the monetary sanctions were removed from the case, the only remaining "sanctions" were the statements made in the published opinion that had not been vacated. *Id.* at 89. The court recognized the reputational harm such statements could have on the attorneys, but reiterated that "federal appellate courts review decisions, judgments,

orders, and decrees—not opinions, factual findings, reasoning, or explanations." *Id.* at 90. Because the monetary sanctions were ameliorated and no reprimands were imposed, the court found it "lack[ed] jurisdiction to consider the propriety of the offending findings." *Id.* The attorneys argued that the court should hold that "harsh words that reflect adversely on a lawyer's professionalism always should be treated as a reprimand (and, therefore, as a sanction)," but the court concluded that trying to draw a line between "routine judicial commentary" and "commentary that is inordinately injurious to the lawyer's reputation" would be too burdensome to manage effectively. *Id.* at 91. The court did not want to invite litigation over the issue of when statements become sufficiently harsh, and the court could not determine how to limit this analysis to just statements made against attorneys and not other third parties. *Id.* ("Lawyers, witnesses, victorious parties, victims, bystanders—all who might be subject to critical comments by a district judge—could appeal their slight if they could show it might lead to a tangible consequence such as a loss of income." (quoting *Bolte v. Home Ins. Co.*, 744 F.2d 572, 573 (7th Cir. 1984)) (internal quotation marks omitted)). The First Circuit said it did not want to turn an appellate court into "some sort of civility police charged with enforcing an inherently undefinable standard of what constitutes appropriate judicial comment on attorney performance." *Id.*; *see also Weissman v. Quail Lodge, Inc.*, 179 F.3d 1197, 1200 (9th Cir. 1999) (agreeing with the court in *Williams* that "words themselves do not constitute sanctions" and do not independently trigger a right to appeal).

The United States Court of Appeals for the Seventh Circuit reached a similar conclusion in *Clark Equipment Co. v. Lift Parts Manufacturing Co.*, 972 F.2d 817 (7th Cir. 1992). The district court awarded attorney's fees and costs to be paid by the sanctioned attorney due to the attorney's role in contributing to the absence of a crucial

witness at trial and for re-arguing an issue that had previously been resolved. *Id*. at 818. The attorney immediately appealed the sanctions, but the parties entered a settlement during the pendency of the appeal that included a commitment by one of the parties to pay all of the attorney's fees owed by the offending attorney. *Id*. The court recognized that district courts have an interest in guaranteeing that the rules of procedure were followed, but that interest cannot keep a compensatory consent award "alive for appeal after the parties have settled." *Id*. at 819 ("[T]he beneficiary of a compensatory sanction may bargain away the court's interest in seeing its rules enforced."). The court explained how, normally when an appeal becomes moot, the appellate court vacates the district court's judgment and remands with instructions to dismiss the complaint. *Id*. But, because of the settlement, the court clarified that there was no need to dismiss the complaint or vacate the judgment. It pointed out that the attorney was requesting that the court vacate the opinion, not the judgment. *Id*. at 819–20. The court declined to take that step, explaining that appellate courts review judgments, not opinions. *Id*.

We agree with the reasoned analysis of our sister circuits. The Attorneys, in essence, face a redressability problem. Once all parties entered into the settlement agreement, no party—except the Attorneys for reputational reasons—had any enduring interest in the underlying order dismissing the case with prejudice. The case was, for all purposes, complete, considering that the settlement resolved the outstanding motion for attorney's fees under 35 U.S.C. § 285. The fact that the sanction was directed at Tesco in the opinion, not the Attorneys, further supports the conclusion that no party retains an interest in the *judgment* by the district court. Our options

for redressing the reputational injury of the Attorneys are therefore greatly limited.[8]

*Walker v. City of Mesquite*, 129 F.3d 831 (5th Cir. 1997) is not to the contrary. In *Walker*, the Fifth Circuit merely concluded that the court had jurisdiction to hear an appeal of a formal sanctions order premised solely on damage to the attorney's reputation. *Id.* at 832 ("We have heretofore held that monetary penalties or losses are not an essential for an appeal."). We have similarly held that our jurisdiction does not require a monetary sanction. *See Precision Specialty Metals*, 315 F.3d at 1352–53. Although *Walker* may be relevant to determining when formal non-monetary sanctions which have not been vacated or mooted by later developments are sufficient to justify appellate jurisdiction, *Walker* does not provide insight into the redressability issues faced by the Attorneys.

Nor do the other cases upon which the dissent relies help the Attorneys' cause. *Fleming & Associates v. Newby & Tittle*, 529 F.3d 631 (5th Cir. 2008), was concerned with a district court's continuing authority to impose sanctions predicated on counsel's misconduct even after a case has settled. The Fifth Circuit simply affirmed the trial court's right to impose non-compensatory sanctions in such circumstances and its own ability to review any sanction so imposed. *Id.* at 640. *Perkins v. General Motors Corp.*, 965 F.2d 597 (8th Cir. 1992) was to the same effect. Neither case dealt with a circumstance where no sanction

---

[8]    We note that the parties, but not the intervening attorney, in *Nisus* also settled their dispute prior to appeal. Rather than decide the question of whether the district court's dismissal order amounted to the type of formal judicial action over which we could exercise jurisdiction, we instead decide this case on redressability grounds.

remained in place.  Indeed, both recognized that sanctions designed to compensate a party for the harm it incurred because of the misconduct of its adversary or its counsel— such as the burden shifting sanction and dismissal order at issue here—*are* mooted by any subsequent settlement.

*Kirkland v. National Mortgage Network, Inc.*, 884 F.2d 1367 (11th Cir. 1989), *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir. 1983), *Grider v. Keystone Health Plan Central, Inc.*, 580 F.3d 119 (3rd Cir. 2009), *Sheppard v. River Valley Fitness One, L.P.*, 428 F.3d 1, 6 (1st Cir. 2005), and *Obert v. Republic Western Insurance Co.*, 398 F.3d 138, 143 (1st Cir. 2005), *remand order modified*, 2005 U.S. App. LEXIS 4793 (1st Cir. Mar. 24, 2005), were all cases where formal sanctions and/or reprimands were imposed upon counsel, leaving an order in place which could be reviewed and presumably vacated. For example, *Sheppard v. River Valley Fitness One*, 428 F.3d at 6, involved a monetary sanction against an attorney for misrepresenting his client's settlement in a closely related case to the plaintiff.  Although the dissent cites *Sheppard* as demonstrating that the First Circuit permits review of "factual findings by themselves (i.e. unattached to any sanctions)," the court in fact preceded this statement with, "*if an appellate tribunal has jurisdiction to review [a sanctions] order*, its examination will encompass the underlying findings." *Id.* (emphasis added).  The court affirmed the monetary sanction in that case, but vacated a single factual finding accompanying it.  In *Obert v. Republic Western Insurance Co.*, 398 F.3d 138, 143 (1st Cir. 2005), *remand order modified*, 2005 U.S. App. LEXIS 4793 (1st Cir. Mar. 24, 2005), the attorneys appealed orders sanctioning their conduct.  The court granted review of formal rulings that the attorneys violated state ethics rules and Rule 11, while confirming that the settlement of the underlying case mooted the award of attorneys' fees and the revocation of pro hac vice status.

The only two cases where it appears reputational injury without more was deemed sufficient to justify the exercise of jurisdiction, *Butler v. Biocare Medical Technologies, Inc.,* 348 F.3d 1163 (10th Cir. 2003) and *Johnson v. Board of County Commissioners,* 85 F.3d 489 (10th Cir. 1996)—both out of the Tenth Circuit—lacked any discussion of the redressability concern upon which our decision is predicated. This is perhaps understandable since, in both cases, the district courts' orders were affirmed, obviating the need to assess what relief the court of appeals might fashion.

The Attorneys request that we remedy their injury in one of three ways: (1) vacate the underlying order; (2) remove the district court's finding of bad faith; or (3) remand for a full hearing on litigation misconduct. There is no need to vacate the district court's judgment and underlying order because the settlement rendered that step unnecessary by making the judgment moot. *See Clark Equip.,* 972 F.2d at 819–20. And we decline to address the predicate findings in the trial court's opinion. As the court in *Williams* correctly explained, and we have noted in many contexts, Courts of Appeals review judgments, not opinions. 156 F.3d at 90; *cf. OSRAM Sylvania, Inc. v. Am. Induction Techs., Inc.,* 701 F.3d 698, 707 (Fed. Cir. 2012) ("we review judgments not opinions"); *Mangosoft, Inc. v. Oracle Corp.,* 525 F.3d 1327, 1330 (Fed. Cir. 2008) (same); *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1540 (Fed. Cir. 1983) ("We sit to review judgments, not opinions."). We also will not remand for a full hearing on litigation misconduct. That would be an unnecessary use of the district court's and the parties' resources. Although the Attorneys claim that a full hearing would allow them the opportunity to clear their name, we have no authority to order a court to conduct a hearing in a case that is closed and cannot be reopened.

We agree that statements made in a judicial opinion can harm the reputation of attorneys, and that an attor-

ney's reputation is one of his or her most valuable assets. But that concern alone is insufficient to justify our jurisdiction where there is no judgment that remains. There is no remaining sanction which could be vacated or punishment imposed upon the Attorneys which could be reversed. There is simply no Article III case or controversy that allows us to redress any reputational harm the Attorneys may have suffered.

## CONCLUSION

Because we find that, in light of the settlement entered by all parties to the litigation, including the Attorneys, there remains no on-going case or controversy, we dismiss the appeal for lack of jurisdiction.

## DISMISSED

# 𝔘nited 𝔖tates 𝔆ourt of 𝔄ppeals for the 𝔉ederal 𝔆ircuit

———————

**TESCO CORPORATION,**
*Plaintiff*

**v.**

**NATIONAL OILWELL VARCO, L.P., OFFSHORE ENERGY SERVICES, INC., FRANK'S INTERNATIONAL, LLC,**
*Defendants-Appellees*

**v.**

**GLENN A. BALLARD, JR., JOHN F. LUMAN, III,**
*Interested Parties-Appellants*

———————

2015-1041

———————

Appeal from the United States District Court for the Southern District of Texas in No. 4:08-cv-02531, Judge Keith P. Ellison.

———————

NEWMAN, *Circuit Judge*, dissenting.

The issue on this appeal is whether these two sanctioned attorneys should have, and do have, the right and opportunity to "clear their name" by appealing the sanctions order. My colleagues on this panel hold that they do not, for the reason that "a full hearing on litigation misconduct" would be "an unnecessary use of

the district court's and the parties' resources." Maj. Op. at 22. Thus this court holds that an appeal to bring out potentially mitigating information is not available.

These sanctioned attorneys ask for the opportunity to provide privileged records that they say will clear their name, stating that these records were proffered to the district court judge, who declined to receive them. These sanctioned attorneys are surely entitled to an appeal (or remand to the district court, as alternatively requested). Precedent in all of the other circuits would so allow, and fundamentals of due process so require. From my colleagues' contrary ruling, I respectfully dissent.

I

A lawyer's reputation is the lawyer's most valuable asset. These two lawyers were publicly sanctioned, with imposition of the most severe punishment: dismissal of the client's case with prejudice. The reason was that two witnesses testified contrary to what these lawyers had, three years earlier, told the trial judge would be the witnesses' testimony concerning a Tesco brochure related to the patented device.

The panel majority refuses the attorneys' request for appeal or proceedings to allow them to provide these privileged records. My colleagues cite "jurisdictional" grounds, stating that the case is over because the parties "settled." Every other circuit that has considered this aspect has held that settlement does not bar an attorney's right to appeal a sanctions order.

The panel majority not only rules that no appeal is available and that the proffered exculpatory evidence cannot be received, but the majority also presents, in prejudicial and pejorative detail, the statements of counsel that led to their sanctions. If this issue is to be retried only in appellate dictum, the victims should at least have the opportunity to tell their side of the story.

The closest that the Appellants have gotten to this opportunity is in their appellate brief, where they summarize this history:

> The Sanctions Order found that Attorney-Appellants had willfully misled the district court . . . . The district court's finding was based upon its decision to credit the 2013 post-trial deposition testimony of one former Tesco employee above and against Attorney-Appellants' own in-trial statements made in 2010. Specifically, on November 1, 2010, Mr. Ballard relayed to the district court the contents of several out-of-court conversations Mr. Luman had with two witnesses and described their expected testimony.

Appellant's Br. 2. These witnesses later diverged from the described testimony, leading the district court to impose sanctions and to dismiss the Tesco case with prejudice. The Appellants summarize these events:

> Three years later, when deposed, one of the witnesses apparently remembered these conversations differently, and the other did not remember them at all, even though contemporaneous evidence not only showed that their conversations occurred but also supported what Attorney-Appellants conveyed to the district court. Without reviewing this evidence, the district court concluded on the basis of what one witness could remember years later that Attorney-Appellants must therefore have lied to the court.

Appellant's Br. 2–3. This appeal arises from the district court's refusal to review the proffered evidence that, according to the sanctioned attorneys, would show that they did not misrepresent what they were told by the two witnesses. The Appellants raise due process concerns as to the sanctions procedure, and summarize:

> The district court entered the Sanctions Order
> without conducting a trial or even a show cause
> hearing on the issues covered by the order, and
> without reviewing the contemporaneous evidence
> offered to the district court no less than three
> times for *in camera* inspection.

Appellant's Br. 3. The district court dismissed the case
with prejudice "outright," an action that the Supreme
Court has called "a particularly severe sanction."
*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

The Appellants describe their proffer of evidence as
follows:

> The deposition testimony that forms the sole
> evidentiary basis for the Sanctions Order did not
> accurately reflect what the witnesses had said
> years earlier. Attorney-Appellants could have
> proven so with their privileged notes and emails
> from 2010 had the district court given them notice
> and an opportunity to do so.

Appellant's Br. 4. My colleagues on this panel refuse to
review this evidence, or to require the district court to
review it, stating that we do not have jurisdiction of this
appeal at all, because the case was settled. Nonetheless,
my colleagues describe, in exhaustive detail, the course of
the proceedings below, apparently to demonstrate
counsels' malfeasance. Not only is no mention made of
the proffered exculpatory information, but the majority
reiterates selected parts of the district court's criticisms,
reinforcing the injury while denying the requested
hearing.

Precedent and due process require that sanctioned
attorneys be permitted appellate review of the sanctions
order. In the Fifth Circuit, whose law controls this
procedural issue, the imposition of attorney sanctions is
subject to the processes of law. *Hazeur v. Keller Indus.,*

1993 U.S. App. LEXIS 38258, *12 (5th Cir. Jan. 11, 1993) ("[W]hen a district court imposes sanctions under its inherent authority, due process considerations undoubtedly are implicated.") (*citing Roadway Express v. Piper*, 447 U.S. 752, 767 (1980)). With all respect to my colleagues, their one-sided approach to this appeal, where they deny jurisdiction due to settlement, but nonetheless make adverse findings while simultaneously denying all opportunity of exculpation, is not only prejudicial, but also unfair.

The majority argues that this dissent "fails to recognize" the "fine factual distinctions" upon which sanctions are based. Maj. Op. at 12 n.7. On this ground, the majority justifies ignoring the vast body of precedent in which sanctioned attorneys have had the right and opportunity to defend their reputations. To the contrary, precedent demands that fine facts be found. My concern is that the district court repeatedly refused to receive the Appellants' proffered evidence, although that evidence could affect the factual weight and perhaps even change the conclusion.

The appellate obligation is to assure an adequate and fair factual foundation to which the law is applied. I dissent for precisely this reason: the incompleteness of the record renders the sanction possibly unfair. All of the precedents that I cite are founded on the position that when the trial judge issues a reprimand, it is incumbent on the appellate tribunal to assure that the processes of law are fully recognized.

## II

On the question of loss of appellate jurisdiction based on settlement, my colleagues err in ruling that there is no jurisdiction to review the issue of sanctions. The Supreme Court has made it clear: "It is well established that federal courts may consider collateral issues after an action is no longer pending." *Cooter & Gell v. Hartmarx*

6      TESCO CORPORATION v. NATIONAL OILWELL VARCO, L.P.

*Corp.*, 496 U.S. 384, 395 (1990). *See also Willy v. Coastal Corp.*, 503 U.S. 131, 139 (1992) (a district court's sanctions regarding violations of the court's rules are sustainable, and reviewable by appellate courts, even where the court is later held to lack jurisdiction over the case).

The appealability of a severe sanction, such as dismissal with prejudice, is recognized in all of the circuits. Appealability is not defeated by an intervening settlement. The courts have reasoned that settlement does not "moot" an attorney sanction, for the reputational damage is perpetual.

As the district court resides within the Fifth Circuit, I start with their decisions. The Fifth Circuit, like all the other circuits, recognizes that injury to an attorney's professional reputation is a cognizable and legally sufficient cause for appellate review, for reputation is the attorney's "most important and valuable asset." *Walker v. City of Mesquite*, 129 F.3d 831, 832–33 (5th Cir. 1997).

In *Fleming & Associates v. Newby & Tittle*, 529 F.3d 631 (5th Cir. 2008) the district court had awarded attorney fees as a sanction for improper procedures concerning an expert report; the parties then settled, and agreed that each side would bear its own attorney fees. The district court nonetheless wrote a written opinion that described attorney misconduct during the proceedings. *Id.* at 641. The circuit court held that the sanctions order, and its appealability, survive settlement, stating that "[w]e should not deprive the . . . counsel of the right to equity when the party he represents chose to settle its suit." *Id.* at 638 n.3. The court concluded that "any nonmonetary portion of the sanctions not rendered moot by settlement is appealable for its residual reputational effects on the attorney." *Id.* at 640.

Other circuits have dealt with the effect of settlement on the appeal of an attorney sanction. The First Circuit

explicitly allows review of "factual findings by themselves (i.e. unattached to any sanctions)" due to the "'serious practical consequences' they may have on counsel's reputation." *Sheppard v. River Valley Fitness One, L.P.*, 428 F.3d 1, 6 (1st Cir. 2005) (quoting *Obert v. Republic W. Ins. Co.*, 398 F.3d 138, 143 (1st Cir. 2005), *remand order modified*, 2005 U.S. App. LEXIS 4793 (1st Cir. Mar. 24, 2005). In *Obert*, the First Circuit held that while settlement had mooted the sanctions imposed, "given the substance of the underlying rulings, the reputations of counsel are affected by the findings that individual counsel and their firms violated state ethics rules or Rule 11," the "serious practical consequences of such findings . . . [were] sufficient to avoid mootness." 398 F.3d at 142–143. Here, the district court's action of dismissal of the entire case underscores the seriousness of the charges to which the Appellants were not permitted to respond.

In *Cheng v. GAF Corp.*, 713 F.2d 886, 890 (2d Cir. 1983), counsel was sanctioned by the district court for filing an inappropriate motion. The Second Circuit recognized that "[i]f the case is settled, or if appellant succeeds on the merits, it is not clear that appellant's lawyer will be able to appeal." To address this concern, the Second Circuit permitted an immediate appeal of the fee award.

The Second Circuit has also considered a situation close on its facts to the case at bar, and declined to hold that settlement mooted the attorney's right to appeal from a sanction, "because his reputation—the basis of the attorney's livelihood—is at stake and, unlike his client, he did not voluntarily enter into the settlement in question." *Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 399 (2d Cir. 1997).

Also contrary to the majority's ruling herein, the Eighth Circuit directly ruled that settlement does not

moot the appeal of an attorney sanction. In *Perkins v. General Motors Corp.*, 965 F.2d 597 (8th Cir. 1992), the court rejected the argument that "the district court lost jurisdiction to enforce the sanctions when the parties settled the case." *Id.* at 599. The court held that the district court had authority to levy the sanction and the circuit court had authority to review it, stating that, even though there was no monetary consequence, "[t]he interest in having rules of procedure obeyed does not disappear merely because an adversary chooses not to collect the sanctions." *Id.*

The Eighth Circuit brought pragmatic reasoning to the effect of settlement of the underlying case, on the right of an attorney to appeal a sanction order:

> If an attorney is unable to appeal a sanction order after the underlying case has been settled, the attorney is left with no avenue of challenging the sanction order. The law encourages parties to settle disputes. An attorney must be free to settle cases when settlement is in the client's best interest. The refusal to grant jurisdiction over an appeal of sanctions after the underlying suit has been settled thrusts a personal conflict upon the attorney—by settling a case in the client's interest he may have to forfeit a personal right to appeal the sanctions levied against him.

*Id.* at 600.

The circuits have also held that an attorney has standing to appeal a sanctions order, based on the injury to professional reputation, whether or not other punishment is also levied. In *Butler v. Biocare Medical Technologies, Inc.*, 348 F.3d 1163 (10th Cir. 2003), the court stated "we believe that the position taken by the majority of the circuits, that an order finding attorney misconduct but not imposing other sanctions is

appealable under §1291 even if not labeled as a reprimand, is the proper position." *Id.* at 1168.

The circuits stress the reputational aspect of sanctions awards in cases that were settled. In *Gruder v. Keystone Health Plan Central, Inc.*, 580 F.3d 119, 133 (3d Cir. 2009) the court agreed that "the settlements did not moot the appeals because the Appellants experienced (and continue to experience) reputational harm."

In *Johnson v. Board of County Commissioners*, 85 F.3d 489 (10th Cir. 1996), the court held that "settlement of an underlying case does not preclude appellate review of an order disqualifying an attorney from further representation insofar as that order rests on grounds that could harm his or her professional reputation." *Id.* at 492.

In *Kirkland v. National Mortgage Network, Inc.*, 884 F.2d 1367 (11th Cir. 1989) the court held that an attorney's appeal of an order revoking his *pro hac vice* status survived dismissal because "the 'brand of disqualification' on grounds of dishonesty and bad faith could well hang over his name and career for years to come." *Id.* at 1370.

The cases cited by the majority do not support their position that settlement removes the sanction from appellate review. The majority relies primarily on *In re Williams*, 156 F.3d 86 (1st Cir. 1998), where the court held a bankruptcy judge's sanctions order unappealable on the facts of that case, the court explaining that appealability of the sanction "depends on whether the findings comprise a decision, order, judgment, or decree." *Id.* at 89. The court observed that the monetary fine against counsel had been withdrawn, and let stand the chastisement of counsel. The court held that since there was no consequence and no punishment, there was no appeal.

Although my colleagues recognize that in *Williams* there was no adverse consequence to the criticism of counsel "[b]ecause the monetary sanctions were ameliorated and no reprimands were imposed," Maj. Op. at 18, the panel majority nonetheless holds that *Williams* supports non-appealability for absence of jurisdiction. There is, however, a critical space separating the *Williams* ruling that without a formal reprimand or other adverse consequence, ordinary criticism of an attorney is not appealable. In contrast, in the case at bar, the ultimate sanction of dismissal of the client's case was imposed, accompanied by a published Sanctions Order recounting the transgressions by counsel.

The other cases that the majority says supports its bar to appeal, are inapposite here. In *Bolte v. Home Insurance Co.*, 744 F.2d 572 (7th Cir. 1984), the circuit court found that *only* because no sanctions were actually imposed by the district court *upon settlement and dismissal* was the issue moot. Here, sanctions, harsh sanctions, *were imposed*. And even there, the court questioned whether defamatory statements alone were *never* sufficient to raise a claim for appellate relief, citing to *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir. 1983), where the court alluded that the reputational damage to attorneys in that case was an argument worth consideration. *Id.*

The panel majority also relies on *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194 (9th Cir. 1999). The district court statements at issue in *Weissman* and the present appeal are far apart. In *Weissman*, the district court stated the attorney's behavior reflected "a serious lack of professionalism and good judgment." *Id.* The circuit court found that that statement did not constitute a formal reprimand and so avoided appellate review. Here, in contrast, the district court issued a separate Sanctions Order, accompanied by the dramatic act of dismissing the client's case with prejudice.

Also in *Clark Equipment Co. v. Lift Parts Manufacturing Co.*, 972 F.2d 817 (7th Cir. 1992), after the client agreed to pay the entire attorney fee sanction levied against the offending attorney, the court declined to accept the attorney's appeal of the sanction, the court stating that the entire consequence of his transgression had been "bargained away." *Id.* at 819. Yet still, the circuit court found sufficient purchase to vacate the district court's judgment to the extent it imposed sanctions. On the facts of that case, the circuit court's treatment was not a matter of "jurisdiction" but of pragmatic judicial wisdom.

In sum, there is no support for the majority's general theory that there is no "jurisdiction" to appeal an otherwise appealable sanction, after the case has been settled. Review of all the circuits reveals a logical pattern whereby the integrity of the judicial process is preserved not only by authorizing the imposition of sanctions, but also by assuring due process in the imposition itself. And when there is a settlement, the courts have recognized that jurisdiction is present, and have reviewed the imposition of sanctions as appropriate to the specific situation.

In today's ruling the Federal Circuit stands alone. Indeed, this panel stands alone among Federal Circuit rulings.

III

The law of this circuit is also on the side of judicial review. In *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346 (Fed. Cir. 2003), this court stated that "a judicial reprimand is likely to have a serious impact upon a lawyer's professional reputation and career," and is "directly appealable" when "accompanied by a sanction or findings." *Id.* at 1352–53. We elaborated in *Nisus Corp. v. Perma-Chink Sys.*, holding that *Precision Specialty Metals* made "clear that the phrase

12    TESCO CORPORATION v. NATIONAL OILWELL VARCO, L.P.

'sanctions or findings' referred to the formal imposition of the court's inherent power to penalize those who appear before it." 497 F.3d 1316, 1321 (Fed. Cir. 2007) (quoting *Precision Specialty Metals*, 315 F.3d at 1352).

Here, the attorneys were "before the court as a participant in the underlying litigation, and the court's action was directed at regulating proceedings before the court or over which the court had supervisory authority." *Id.* Indeed, this court has "taken the position that a court's order that criticizes an attorney and that is intended to be 'a formal judicial action' in a disciplinary proceeding is an appealable decision." *Id.* at 1320.

The majority seeks to avoid the issue of "whether the district court's dismissal order amounted to the type of formal judicial action over which we could exercise jurisdiction . . . instead deciding this case on redressability grounds." Maj. Op. at 20 n.8. That issue is at the heart of this matter, for a district court's dismissal of the underlying action with prejudice based on alleged attorney misconduct is a sanction accompanying a judicial reprimand, and is directly appealable as provided in *Precision Specialty Metals* and *Nisus*.

IV

The district court invoked its inherent power to punish what it saw as bad faith and willful misconduct. Such power is available "only if clear and convincing evidence supports the court's finding of bad faith or willful abuse of the judicial process." *In re Moore*, 739 F.3d 724, 729–30 (5th Cir. 2014). The issue is not whether the district court has such inherent disciplinary power, but whether these sanctioned attorneys are entitled to appeal and to bring forth privileged documents to defend themselves. My colleagues hold we do not have jurisdiction to consider this issue.

Common to all circuits is the requirement that sanctionable behavior must be established by clear and convincing evidence on the record as a whole. There cannot be clear and convincing evidence without an opportunity to present contrary evidence. Although my colleagues state that the Appellants had adequate opportunity to "recant their statements to the court," it was not until three years after these attorneys' conversations, that the witnesses were deposed.

The Fifth Circuit explains that: "For this court to affirm inherent power sanctions on grounds other than those expressly chosen by the imposing court would constitute an encroachment upon that court's discretion unwarranted by the concerns for order and necessity inherent in their use." *Crowe v. Smith*, 151 F.3d 217, 240 (5th Cir. 1998). The Appellees, scouring the record for damaging communications not mentioned by the district court, have presented grounds upon which the majority's affirmance affixes this court's *imprimatur*, exceeding this safeguard—again, while insisting that we do not have any jurisdiction at all.

My colleagues ignore the vast body of circuit reasoning, and instead hold that "a full hearing on litigation misconduct" would be "an unnecessary use of the district court's and the parties' resources." Maj. Op. at 22. Indeed, some aspects of due process of law do consume resources. The settlement did not eradicate the right of these Appellant attorneys to appeal the sanction against them. They have the right to clear their name in appropriate further proceedings. From my colleagues' contrary ruling, I respectfully dissent.